## CORSER v. BRATTLEBORO OVERALL CO.

(Circuit Court, D. Vermont. April 1, 1899.)

1. PATENTS—INVENTION—IMPROVEMENTS IN COATS.

It having been customary, in putting on the collars of coats, to sew the underside to the coat, and then sew the upper side down over the seam, there was no invention in making the outside of the collar a "seam" larger than the inside, and seam both to the coat at the same time, and then turn the wide part under and seam it. This is simply a change in the form and arrangement of the constituent parts, and not patentable.

2. SAME.

In cutting coats, there can be no invention in laying on the patterns in a particular way, for the purpose of economizing material. This is merely a matter of judgment, producing good workmanship, and not a matter of invention.

3. SAME.

The Corser patent, No. 364,219, for improvements in coats and the methods of making them, held valid and infringed as to claim 3, and void as to the remaining claims for want of invention.

4. SAME—APPORTIONMENT OF COSTS.

Where three patent cases were heard upon the same testimony, and in one case the decree was for plaintiff, in another for defendant, and in the third for plaintiff on one claim, and for defendant on the three others, held, that in each case costs would be allowed to the recovering party for all but the evidence, and the costs for the evidence would be disallowed in all of the cases.

This was a suit in equity by Brackett G. Corser against the Brattleboro Overall Company for alleged infringement of a patent for improvements in coats and the methods of making them.

James L. Martin, for plaintiff.

Kittredge Haskins and William E. Simonds, for defendant.

WHEELER, District Judge. This suit is brought upon patent No. 364,219, dated June 7, 1887, and granted to the plaintiff for an alleged improvement in coats and method of making them. The improvement in coats relates to the putting on of the collars, and is thus described in the specification:

"It has been customary to sew the underside to the coat, and then sew the upper side down over this seam, which latter is a difficult operation, and usually leaves the collar awry or twisted and deformed by plaits. I make the outside of the collar a 'seam' larger than the inside, and seam both to the coat at the same time, after which the wide part is turned under and seamed."

There are four claims for this alleged improvement,—two for a coat provided with a collar composed of these parts, and connected to the coat in this way; and two for "the improvement in the art of attaching collars to coats, which consists in providing" these parts and sewing them to the neck of the coat in this way. A part of the method of making is a sleeve pattern, with longitudinal lines where the seam under the arm would come, or notches where the ends of the lines would be, either whole, or divided there with the lines along the edges of the parts, for conveniently varying that seam, and the sizes of the parts, and allowing economy in material, by placing the seam along lines at equal distances each way from the middle, and so preserving the size

of the sleeve by adding as much to one part as should be taken from the other. The corresponding claim is:

"(3) The pattern in one or more parts for the entire sleeve, provided with longitudinal lines, or equivalents, as described, for locating the under-arm seam, whereby it is adapted for use in cutting sleeves of a given size, but which may be made of parts having various relative widths, substantially as set forth."

The other forms of the method are economical ways of laying the various patterns on the cloth, the smaller among the larger, for cutting out the parts of the coats.

The improvement in the coat is like that in the shoe in question in Burt v. Evory, 133 U. S. 349, 10 Sup. Ct. 394, where the court said:

"Their shoe performed no new function. In the construction of it the vamp, the quarters and the expansible gore flap were cut somewhat differently, it is true, from the like parts of the shoes constructed under the earlier patents referred to, but they subserved the same purposes. It is well settled that not every improvement in an article is patentable. The test is that the improvement must be the product of an original conception."

And, after citing and commenting upon cases, the court further said that it was "simply a change in form and arrangement of the constituent parts of the shoe, or an improvement in degree only."

So, here, coats are and have long been universally worn and known, having many and various styles of collars and modes of sewing them on. Whether the prior structures are covered by patents, or ever have been, or not, makes no difference as to the character of the improvement upon them. The collars of the coats of this improvement perform no new function. Turning under an edge to sew down is no new thing. Neither is cutting the part to be turned under enough larger for that purpose any new thing. It is, as in the case of the shoe, "simply a change in the form and arrangement of the constituent parts," and not patentable. Whether such an art as that of providing parts of collars of different sizes and sewing them on together, and then turning under the edge of one, is patentable, has been doubted. Walk. Pat. (3d Ed.) §§ 3, 3a: If it is, the ingredient of invention would be as necessary as in that of the product, and as much wanting in this process. The same consideration will apply to the claims for laying on of patterns for cutting coats. Tailors and cutters have been laying on patterns for economy of cloth for many years, if not from time immemorial. By the first claim, this improvement "consists in cutting a front and front facing from one side of the web, the upper part of the sleeve from the opposite side adjacent, the entire back from the body of the web, the under parts of two sleeves from the sides adjacent, and the parts of the collar and pocket piece from closely adjacent or intermediate parts of the web." By the second, it consists in substantially the same method, including the use of the longitudinally marked pattern for obtaining the relative width of the parts of the sleeve. If this order of placing the patterns is not new, it is merely a good way; if it is new, it is merely a better way. It is a matter of judgment, producing good workmanship, and not a matter of invention, producing a distinctively new method. It is by the principles of the cases mentioned, and many others, outside of patentable invention. The inclusion of the use of a new style of pattern in the

method does not make the method itself patentable, although the pattern should be patentable.

The lines upon the pattern are not shown to have been known and used before. The notches shown, although used for the same purpose, are not the same things. The lines are new things on the pattern for accomplishing the same purpose with the pattern, and the pattern, with lines upon it, was a new manufacture. To contrive them and place them there for the purpose would seem to involve constructive ingenuity, which amounted to an original conception of this device as an addition to the former pattern. No adequate reason is made to appear why the third claim is not valid for the pattern with these lines upon it. The use of such patterns by the defendant does not appear to be disputed. The notch for sleeve buttons on the patterns used is an addition not affecting the use of the lines. If it is an improvement, the patented invention has been taken to put the improvement upon, and the taking of it is none the less an infringement. So, the plaintiff appears to be entitled to a decree upon this claim only.

This and two other cases between the same parties have been heard upon the same testimony, in one of which the plaintiff is to have a decree, and in the other the defendant. Obviously, the cost of the testimony is to be somehow apportioned. Perhaps the most equitable and practicable way would be to allow costs in each case to the recovering party for all but the evidence, and to disallow costs for that in all the cases. Decree for plaintiff as to third claim only.