## RAPP v. CENTRAL FIRE–PROOF DOOR & SASH CO.

(Circuit Court, S. D. New York. January 22, 1908.)

1. PATENTS—INVENTION—COMBINATION OF OLD ELEMENTS.

That a combination of old elements in a structure may constitute invention, there must be a mental conception, a new and improved result that the ordinary mechanic skilled in the particular art could not have produced without the exercise of inventive skill.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, §§ 27–29.]

2. SAME—FIREPROOF DOOR.

The Rapp patent, No. 653,400, for a fireproof door, consisting of an ordinary wooden door covered with metal sheets with panels, etc., to correspond to the door, their edges interlocked by means of marginal lips hooked together, discloses no feature not old in the art, and produces no new nor improved result, and is void for lack of invention. Claims 2 and 3, if conceded invention, held not infringed.

In Equity. Suit in Equity to restrain alleged infringement of United States letters patent No. 653,400, dated July 10, 1900, to John W. Rapp for "fireproof door."

Fred H. Bowersock (R. H. E. Starr, of counsel), for complainant.
Grafton L. McGill (J. Nota McGill, of counsel), for defendant.

RAY, District Judge. The patentee says that he has invented certain new and useful improvements in fireproof doors, and that his invention of the patent in suit, No. 653,400, dated July 10, 1900, relates thereto. He describes a fireproof door, which he says embodies his invention. It comprises "a core or filler," which is nothing more nor less than an ordinary door of wood of any construction, and "a metallic covering which completely incloses the core or filler." This metallic covering has "panels," "horizontal connecting rails," and "vertical connecting rails"; also, "top and bottom rails," which are, in fact, also "horizontal connecting rails," and also stiles, in fact "vertical connecting rails." These correspond to the woodwork of any ordinary paneled door; that is, it has all the framework and panels of an ordinary door. Assume, first, that the core or filler, the wooden door, is complete. We are now to convert it into a "fireproof door." The metal panels are stamped into shape, any desired shape, only they must correspond in size with the core or filler. This stamping is done, of course, with a proper stamping machine suitable to stamp such a metallic substance, sheet iron, or steel, or tin. Eeach panel is provided with a "peripheral or marginal lip." This lip is nothing more nor less than the bending over of a part of or the whole of the outer edges of the panel. "This lip may be either continuous or interrupted." The horizontal connecting rails and the vertical connecting rails are provided with the same peripheral or marginal lips. These engage with the lips of the panels, hook into them so to speak. The top and bottom are formed "to fit over the top and bottom edges of the core or filler," simply bent over, and the stiles are formed "to fit over the side edges of the core or filler." Each face of the top and bottom rails and of the stiles is provided with a similar lip; that is, the edges bent over. These engage with the adjacent lips of the panels and rails, hook into each other. These panels are secured in position by blind nailing them to the core, and the connecting rails are next secured in position by engaging their lips with the lips of the panels, simply hooking them into each other. The top and bottom rails and the stiles are applied and connected in the same manner. The seams formed by thus engaging the lips are then pressed together, "preferably flattened by means of a mallet or other device." This method of uniting the parts is known as "seaming." The joints thus formed may be closed by welding. The construction is exceedingly simple and connection of the parts is easily and rapidly made. Such fireproofing can be applied to one or to both sides of a door, and, where the stiles and top and bottom rails are bent over the edges of the core, they may be nailed or provided with lips, and hooked together and flattened down. There is nothing new or novel in attaching one sheet of metal to another by means of such lips. There is nothing new or novel in the lips themselves. There is nothing new or novel in the idea of covering a door of wood with suitable metal to make it fireproof.

The claims of the patent, three in number, read as follows:

"1. The combination in a fireproof door, of a core or filler and a metallic covering therefor, said covering comprising front and back panels and connecting-rails, and top and bottom rails and stiles for fitting over the edges of the core, or filler.

"2. The combination in a fireproof door, of a core or filler and a metallic covering therefor, said covering comprising front and back panels, each having marginal lips, connecting-rails having marginal lips which engage with the marginal lips of the panels, and top and bottom rails and stiles fitting over the edges of the core or filler and connected with adjacent panels and connecting-rails.

"3. The combination in a fireproof door, of a core or filler and a metallic covering therefor, said covering comprising front and back panels, each having marginal lips, connecting-rails having marginal lips which engage with the marginal lips of the panels, and top and bottom rails and stiles fitting over the edges of the core or filler, said top and bottom rails and stiles being each provided with marginal lips which engage with the lips of adjacent panels and connecting-rails."

Claim 2 adds to claim 1 the marginal lips and connection with the panels, while claim 3 adds the marginal lips, or connection, to the top and bottom rails and stiles. The elements of claim 1 without the lips or other means for engaging the parts and connecting them together would be an incomplete and inoperate and useless structure. In fact, no structure at all, but simply pieces of metal. We must read into it some means for connecting the various parts. Should they be nailed to the core or filler in the usual manner of nailing, we would not have a fireproof door. Defendant says that no patentable invention is disclosed in view of the prior art.

In the patent to C. K. Marshall of May 26, 1868, No. 78,218, for "improved metallic doors and shutters," we have in figure 1 an ornamental panel. In figure F we have plates, stiles, and rails. In figure 4 we have "interior view of panel," etc.; in figure 5 "corrugated plate or panel on one side and plain plate on the reverse"; in figure 6 "section of rail or stile, showing the mode of connecting the rail or stile-plate with the panel plate." In figure 7 of this patent we have another representation of what is shown in figure 6, and here we find the exact peripheral or marginal lips of the patent in suit engaged or hooked into each other.

The patentee, Marshall, says:

"My invention consists in constructing a metallic door, shutter, or base-panels for windows of two or more sheets of metal, either plain or corrugated, which are bolted, riveted, screwed, soldered, or seamed together. * * * To the upper and lower portion of these panel-plates or sheets, I attach rails, and to their sides stiles, by means of rivets, bolts, screws, solder, or seaming. Between the panel-plates and the rails and stiles I insert braces similar in every style to those which are introduced between the panel-plates. * * * Another feature of my invention consists in the system of ornamenting the panel-plate, which gives to the door or shutter a rich and beautiful appearance. I have only shown in the drawings one method of ornamentation, viz., attaching raised metallic designs by means of secret rivets. This I have done simply to illustrate the principle of ornamentation; for it will readily occur to any one skilled in the art that, while the designs from which selections for ornamenting the door are almost endless, they are scarcely more numerous than are the various metals by which they can be produced. * * * We constantly see buildings erected of solid masonry, stone sills for the windows and doors, and with metallic roofs, all bespeaking security; still

we find the doors and shutters of wood. So long as this is the case, it is idle, no matter how massive and well built the structure may be, to pretend that it is either fire or burglar proof; for the burglar in a few moments cuts out one of the panels of the door and enters the building, or a fire in an adjoining house or across the street will soon so intensely heat the door or shutter, when made of wood, as is often the case, especially in our large cities, that ere you are cognizant of the fact the building is in flames. I am aware that metallic doors have been used, but they are such heavy, ungainly things that, whenever seen, the mind instantly and instinctively associates them with either a vault, a tomb, or prison. The object of my invention is to furnish the market with a double-cased, raised and ornamented metallic door or shutter, burglar and fire-proof, cheap and light, neat and ornamental, and such as can be painted so as to represent any kind of wood, and, if desired, any kind of carving. * * * The braces having been properly arranged and attached to the panels, the latter are firmly united together, which can be done by means of rivets, bolts, screws, b, b, or they may be soldered or seamed. B, B, are rails, which inclose the upper and lower portion of the panels, and C, C, are stiles, which inclose their sides. These rails and stiles are united to the panels by bolts or rivets, b, b, as clearly shown in Figs. 6 and 7. Between the panel, A, A, and the rail and stile, B, C, there is necessarily left an opening, the width of the brace, a. This opening is closed by a moulding, D, which may be made in sheets, and soldered, as shown in Fig. 2, or seamed, as shown in Fig. 7, or it may be 'struck up' with the rails and stiles, as shown in Fig. 6."

The only substantial difference between this door and the one of the patent in suit is the core or filler. Marshall used braces or corrugated metal; but the core of the patent in suit is old in the art, as we shall see.

In patent to Hoyt, No. 124,271, March 5, 1872, for iron doors or shutters, he says:

"The whole surface of the door or shutter may be divided into panels and ornamented," etc.

In patent to Kittredge, No. 183,940, October 31, 1876, sheet metal doors, we find:

"Each side and end of the door-frame consists of a single piece of sheet metal, bent at right angles to form the thickness of the frame, as will be seen at A, Figs. 2 and 3, which represent transverse and longitudinal sections, indicated by the lines, a, and, b. The two sides, c, of the frame are turned outward at right angles, forming flanges B, whereby the panels are secured to the sides of the frame by having the sheet of metal forming the panel wide enough to admit of being depressed at E, Fig. 3, to form the emboss of the panel, and extend to the edge of the frame, at which point it is turned at right angles to form the flanges, F, the extreme edges of which are turned back upon themselves, making a return bend or lock, G, in which is received the flanges, B, of the door-frame, as will be seen in Fig. 3, representing a transverse section of the door in direction of the line, b."

Here we have stiles and panels and the same locking of the parts as in the patent in suit.

In patent to Walton, No. 227,934, of May 25, 1880, "improvements in fireproof construction of doors, shutters," etc., the patentee says, among other things, that his invention is to provide a new and useful mode of construction, "whereby their ability to resist the action of fire and their value as nonconductors of heat are greatly increased and their strength greatly enhanced." He has layers of metal and wood, just what we have in the patent in suit, for Rapp has an outside layer

of metal, an inside layer of wood, and then, on the other side, another layer of metal.

He says "the metal plates are preferably bent around the edges of the wooden layers," illustrating two methods of doing this. He also says:

"One great objection urged to metal shutters as commonly constructed is that, when a fire breaks out in an adjoining building, the shutters become so heated on the outside as to warp, allowing the flames to gain ingress through the windows or doors to the inside of the building. Another objection urged to metal shutters as commonly constructed is that, when there is a conflagration within the building, the shutter becomes heated, so that, if water is thrown against the outside of the shutter, the cold on the outside and heat within will cause a shutter made of metal alone to warp, so as to give entrance to the air, and thus the fire will burn much more furiously than it would could it be confined to the inside of the building, and air not be admitted. My invention provides against the warping of the shutters·in the following manner: If the conflagration is without the building and the shutters closed, the outer plate of metal will become heated, and this will cause the layer of wood next to it to become heated; but, as the air, cannot get to this layer or any other of the intermediate layers, it does not become sufficiently heated to ignite or .transmit the.heat to the other layers to such an extent as to cause the shutter to warp. If the conflagration is within the building and the shutters closed, the inner layer of the shutter will become heated, but the intermediate layers of wood and metal prevent heat from being communicated to the outside of the shutter to such an extent as to cause it to warp when water is thrown against the outside. Thus the shutter is kept closely against the building over the window or door, and air.is not permitted to enter."

Here we have the wooden core or filler and its ·utility and function fully described.

In patent to Henkle, No. 364,252, of June 7, 1887, we have a wooden door with metal panels, the metal "struck up" with "any suitable design" and "soldered or otherwise attached together"; also "the edges" of the panels "all around are swaged out forming sockets, c, c, of square, rounded, or beaded form and of sufficient size to receive the edges of the rails and cross pieces of the wooden door." Use metal rails and cross-pieces, and we would, of course, connect the socket of one with the lip or bent-over flange of the other, all shown in prior patents.

In patent to Thuener, No. 376,926, January 24, 1888, we have, "metal ceilings formed of plates, or panels." "These plates have * * * and have lips, 18, which are made to tightly clasp the edges of the plates 1 at 13." The drawings exhibit the "peripheral or marginal lips" of the patent in suit hooked into each other. Here, as in the prior patents, we have sheets or panels of metal with edges bent over "up" on the one and "down" on the other, so they will hitch or hook into each other.

In patent to Kinnear, No. 382,094, May 1, 1888, we have "metallic ceiling of metallic plates or panels," and the mode of uniting is given, viz.:

"The corner panel is first put into position, the hooked edges, F, of the beaded edges, E, extending under the folded edge of the said cornice and the edges, D, resting upon.the wooden strips, I and K. The said edges, D, are now nailed firmly to the· said strips, and the said panel is securely fixed in position. The next panel upon each side is then placed in position, with the

hooked edges, F, of the edges, E, of the said panels extending under the folded edge, C, of the panel just placed in position and under the correspondingly-folded edge of the said cornice. The edges, D, of this panel, as in that previously described, rest upon and are nailed to the wooden strips, I and K."

July 12, 1889, there was published in an illustrated weekly journal, "Engineering," published in London, England, and having a large circulation in the United States, an illustrated article on fireproof doors, in which the construction of complainant's door, except in detail, is stated thus:

"The American method of constructing fireproof doors is not to build them of iron, as experience in the method indicates that iron will cripple when exposed to the heat of a burning building. But such doors are made of two thicknesses of matched boards, each about ⅞ in. thick, and at an angle of 90 deg. to the other. When the two courses of boards are 45 deg. from each other, the lateral contraction or swelling, according to conditions of moisture, will cause such doors to twist. These doors are then covered with tinned iron, all edges being bent over in what are called 'lock joints,' and secured to the door by frequent hanging strips, or strips of metal hugged into the edge of the tin and nailed to the door independent of the sheet of tin. The edges of such doors should be covered by sheets lapping around on either side, so as to leave no joint on the edge, and without any nails with heads exposed through the tin. Such a door will resist a very heavy fire, because, under most circumstances, the tin will reflect away the heat; but, even when the temperature has risen high enough to remove every vestige of tin from the iron, the metal still serves as an airtight cell, preventing the combustion of the wood behind, which is slowly converted into charcoal—not burned to ashes."

In the Engineering News, a regular United States publication, of November 9, 1899, we find an article on "Fire Tests of Fireproofing," containing the following:

"The two doors tested by the British committee were a wooden door covered with tinned steel much similar to the well-known underwriters' fireproof shutter employed in this country, and an all-iron framed and panelled door. Both of these doors were subjected to test under identically the same conditions. * * * The armored wooden door was obtained in the open market. It was 4 ft. 3 in. wide by 7 ft. 6 in. high, fixed close to the wall by the maker and overlapped 3 in. on each side. This door was 2 in. thick, made of ⅞ in. pine boards, planed, tongued-and-grooved, and nailed together, diagonally, with wrought-iron nails, clinched on the other side. These boards were completely covered inside and out with tinned steel plates, No. 26 standard wire gage, with welted joints and screwed in the joints. The screws were 6 in. apart, penetrated three-quarters of the thickness of the door, and the screwheads were entirely covered by the welted joints. * * * The wrought-iron door and frame were also obtained in the open market. The frame was made of angle-iron 2½ in. by ⅜ in., and a wrought-iron stop was carried all around the frame and secured with iron screws. The door was ¼ in. wrought-iron plate; and on the inside, forming panels, were 3 in. by ¼ in. wrought-iron stiles, screwed to the iron plate."

In March, 1897, the New York Board of Underwriters issued a publication "Instructions for Construction of Fire Doors and Shutters," and adopted by that board. On the first and second pages we find the following:

"There should be no woodwork or furring about the opening. The doors should be made of two thicknesses (except where openings are made larger than called for in the Standard. See page 11) of 1 inch narrow, tongued and grooved, soft white pine boards (free from sap, pitch, or moisture of any kind), laid diagonally (both sides) and nailed with wrought iron nails driven through

and clinched, then covered on both sides and edges with 10 x 14 inch sheets of 'bright I. C.' tin,. except where doors are exposed to an atmosphere liable to cause rust (then Terne Plates should be used in place of tin), joints flat-locked and securely nailed under laps (barbed wire nails to be used, 1½ inches in size, to be driven 2 inches apart; for shutters 1 inch barbed wire nails should be used), but not soldered."

In a publication on "The Prevention of Fire," issued by Wm. Paul Gerhard at 39 Union Square, New York City in 1887 (second edition), we find:

"With all woodwork the aim should be to prevent the immediate access of air, so as to retain its strength and soundness, even during hours of exposure to heat and flames."

He was referring to wood covered by metal.
Also:

"Elevators must have well-closing doors in order to cut off all drafts and currents of air. It is desirable that the doors be fireproof, not, however, plate iron doors, which warp in case of fire, but tin-encased wooden doors, which are far more efficient. Such doors are made of two thicknesses of tongued and grooved boards, crossing each other diagonally and nailed together. The sheets of tin should be bent over the edges in such a secure way that no air can reach the wood when the door is exposed to heat and flames."

In patent to Kinnear, No. 443,324, we have "metallic ceiling," metal sheets attached by loops formed by turning the edge on itself, and thus forming a lip.

In Richardson patent, No. 443,541, of December 30, 1890, we have the following:

"The object of this invention is to provide a double paneled sheet metal fireproof door for dwelling houses and the like buildings, which is of simple, economical, and durable construction. The invention consists of an interior door composed of a frame or core of wood or equivalent material, an outer covering or casing comprising two like or similar sections of sheet metal entirely concealing the wooden frame or core, and means for securing said metal sections to the wooden frame or core, substantially as hereinafter more particularly set forth and claimed. * * * After these metal sections, D, are thus stamped, rolled, or pressed into the desired shape the edges thereof are bent at right angles to form flanges, e, which serve to conceal the edges of the wooden frame, and also aid in securing the metal sections to the frame or core. One of these metal sections, d, is placed upon each side of the frame or core, and the flanges, e, of said sections are fitted over and upon the sides and ends of the frame and are fastened thereto by means of screws or nails. * * * I have herein shown the metal sections, d, as constructed of a single piece of sheet metal; but I wish to be understood as not limiting my invention to this exact construction, as each section may be constructed of as many smaller sections as may be desired. The wooden frame or core not only serves to stiffen and strengthen the door, but also serves to prevent it from warping—a difficulty heretofore experienced in doors made entirely of sheet metal. I am aware that it is not new to make a door of an interior core of wood and an outer covering or casing of sheet metal, entirely concealing the wooden frame or core."

Patent to Kinnear, No. 445,262, January, 1891, we have the sheets of metal locked, and he says:

"Before thus turning up the flange, A', its outer edge is set back to form the extension, a, the purpose of which is to form a joint in conjunction with the flange, B', on the section, B."

There are other patents of the same general construction, but it is wearisome to enumerate them. We have every feature of the patent in suit disclosed and plainly shown and taught in the prior art. The wooden core or filler is shown and described, and its utility pointed out in several respects. Kept from the air and direct action of the flames it will retain its form and turn to charcoal. It serves to keep the front and back plates apart. It makes the door light, but still strong and keeps it in place and prevents warping. We have in the prior art the metallic covering with front and back panels and marginal interlocking lips. We have the connecting rails, the top and bottom rails and stiles, all connected by lips united in various ways but by marginal lips, seamed, welded, pressed, hooked, flat-locked, etc., including the very lip and mode of uniting the various parts shown in the patent in suit. And we have stiles fitting over the edges of the core or filler and the importance of this emphasized. The necessity of covering the entire core or filler with metal and of not having any exposed nail heads is also emphasized. Ornamental panels, the metal being "struck up," or otherwise ornamented, are also shown and described. Whether we shall have several panels or a few is immaterial. Some designs in the prior art show more, some less. The idea is to entirely cover the filler with metal, keep out air, unite the joints in some way so they will not melt or fall apart, or permit the inflow of air to the core or filler in case of exposure to fire. If ornamentation is desired, use ornamental panels, and even ornamental stiles and rails if desired. It is true that the Underwriters' fireproof door does not show ornamentation, but it does show many pieces of metal united by "joints flat locked"; that is, by lips of the metal hooked into each other, and then pressed down so as to make them flat. Clearly, in view of this prior art, no patentable conception or invention is shown in the patent in suit. The elements are old, except, possibly, in form, and the combination is old, and the means of combining the parts are old. There is no new combination of old elements to produce a new or even an improved or better result. All the patents of the prior art to which reference has been made were in evidence and explained, to some extent at least. Most of them explain themselves.

But complainant says his witnesses should be fully credited and defendant's expert given little attention or credence. Of course, this court recognizes the fact that in many cases the practical experience of men who know is the best qualification of a witness, and that such evidence is far more persuasive and convincing as a rule than mere expert opinions given by persons of no practical experience in the particular art or matter in controversy; but experts cannot change this prior art shown in patents and publications. Neither can witnesses of practical experience destroy or belittle it. Complainant contends that defendant in its structure has substantially copied, line for line, the patent in suit. But in so doing, if it has, the defendant company has also merely copied the prior art. It could not well do the one without doing the other. It is immaterial, in constructing a fireproof door, whether you have one panel or ten, so long as you do not so cut it up as to destroy its strength or make the expense

too great. And the panels may be arranged in any form. You may have one row or two rows perpendicular to each other, or three or four, or more, depending on the size of the door and the size of the panels and connecting rails; but each panel, each rail, and each stile must have marginal lips on their outer edges so as to connect with the adjacent panel, stile, or rail. The patent is prima facie evidence of patentable novelty. Commercial success is evidence on that subject and in close cases may turn the scale. The fact, if it be a fact, that one device has superseded another, is some evidence on that subject, but all this may be overcome, and mere commercial success, etc., do not prove patentable invention.

Complainant says in his brief "that the combination of old elements is the highest form of invention." He cites Cantrell v. Wallick, 117 U. S. 694, 6 Sup. Ct. 970, 29 L. Ed. 1017, Loom Company v. Higgins, 105 U. S. 591, 26 L. Ed. 1177, and Walker on Patents, § 26. This is hardly a correct statement of the law, or of the cases cited. The combination of old elements, if it be a new combination and it differs from the old in its operation and produces a new and useful result, or an improved result (in many cases), shows patentable invention. "It is not invention to combine old devices into a new machine or manufacture, without producing any new mode of operation." Walker on Patents (4th Ed.) § 37; Burt v. Evory, 133 U. S. 349, 10 Sup. Ct. 394, 33 L. Ed. 647; Florshheim v. Schilling, 137 U. S. 77, 11 Sup. Ct. 20, 34 L. Ed. 574.

In Loom Co. v. Higgins, 105 U. S. 591, 26 L. Ed. 1177, Mr. Justice Bradley said:

"It may be laid down as a general rule, though perhaps not an invariable one, that if a new combination and arrangement of known elements produces a new and beneficial result, never attained before, it is evidence of invention."

It is settled that novelty and utility must characterize the subject of a valid patent; but even these are not enough for we must have invention. The new or improved thing must be the product of some exercise of the mental faculties, the result of a mental conception. Pearce v. Mulford, 102 U. S. 112, 26 L. Ed. 93; Atlantic Works v. Brady, 107 U. S. 199, 2 Sup. Ct. 225, 27 L. Ed. 438. Burt v. Evory, 133 U. S. 349, 10 Sup. Ct. 394, 33 L. Ed. 647. In the patent in suit we have no mental conception whatever that was not old and evidenced in the prior art. Given the prior art, and any carpenter and joiner of reasonable skill would have constructed the fireproof door shown in complainant's patent. The complainant may have improved on the form of the doors of the prior art, but not every improvement is invention. There must be the mental conception, a new or improved result that the ordinary mechanic skilled in the particular art could not have produced without the exercise of inventive skill.

The claims of the patent in suit are invalid for want of patentable invention in view of the prior art.

Should we concede the validity of claims 2 and 3 of the patent in suit, defendant does not infringe. Those claims call for the peripheral or marginal lips of the patent on the vertical edges of the panels. They are essential in fact, and are made so by the patent. Defendant

does not use them, but a substitute, the anchor strip, a device in which the panel sheets are rested. This would be the use of an equivalent if the patent in suit were of a pioneer character; but it is not. Complainant was a mere improver in an already crowded art, and is not entitled to any considerable range of equivalents; in fact, is confined substantially to the means shown by him. Computing Scale Co. v. Automatic Scale Co., 204 U. S. 609, 617, 621, 27 Sup. Ct. 307, 51 L. Ed. 645; Cimiotti N. Co. v. American F. R. Co., 198 U. S. 399, 406, 410, 25 Sup. Ct. 697, 49 L. Ed. 1100.

The bill of complaint must be dismissed, with costs. There will be a decree accordingly.