MONCKMEIER v. ERIE MFG. CO., Inc.

ERIE MFG. CO., Inc., v. HARRISON
WHOLESALE CO. et al.

Nos. 6593, 6594.

Circuit Court of Appeals, Seventh Circuit.

July 5, 1938.

Rehearing Denied Aug. 9, 1938.

F. Allan Minne and Raymond L. Greist, both of Chicago, Ill., for Monckmeier and others.

Albert F. Mecklinburger, Sidney Newman, and B. Gordon Aller, all of Chicago, Ill., for Erie Mfg. Co.

Before MAJOR and TREANOR, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

These are appeals by plaintiff in No. 6593 and by defendants in No. 6594. The former was a suit for declaratory judgment seeking to have Patent No. 2,083,742, issued June 15, 1937 to L. S. Poncher and J. B. Newman, afterwards assigned to Erie Manufacturing Company, declared invalid; while the latter was a suit for infringement of said letters patent. By stipulation, the cases were tried together and were conducted as though Erie Manufacturing Company was plaintiff and Monckmeier and Harrison, defendants. For the sake of convenience, and in conformity with the proceedings in the District Court, we shall likewise treat the cases and the parties thereto.

The District Court decreed the patent valid and infringed as to Claims 2, 3, 4, 5, 6, 7, 8 and 13. Defendants, in their printed brief do not dispute infringement and during oral argument before this court, it was admitted, so there is presented only the issue of validity.

The patent in suit is entitled "bumper guard," the function of which is described as follows:

"This invention relates to guards for automobile bumpers, with particular reference to guards adapted to be mounted on the front and rear bumpers in a position to protect the radiator and the trunk door, respectively.

"In modern cars the radiator extends forwardly and terminates closely adjacent the front bumper where it is in a position to be easily damaged by the higher bumpers of other cars. Also, many modern cars are equipped with a rear trunk having a door hinged at the top and extending downwardly to a point closely adjacent the rear bumper. Heretofore it has been impossible to put the usual guards on the front bumper in a position to protect the radiator and still enable the use of a crank when necessary, and it has also been impossible to place guards on the rear bumper which would extend sufficiently high to protect the trunk door and still enable the door to be opened.

"The present invention is directed to a moveable guard which may be placed in the position specified whereby it will afford ample protection and, when mounted on the front bumper, may easily be moved to enable the use of a crank and may also

easily be moved out of the path of the trunk door, when placed on the rear bumper."

Claim 13, we think, is typical of the claims in suit and is:

"A guard for an automobile having a rear door arranged to open in a path closely adjacent the bumper, said guard comprising a member extending upwardly from said bumper and into the path of said door, said guard being hingedly mounted on said bumper for swinging movement out of the path of said door, and means for normally retaining said guard in said path."

The novelty of the alleged invention consists primarily in hinging a bumper guard at the bottom so that it may be swung out of the way and providing means for holding the guard in an upright position. The fastening means for so holding the guard, as is shown by the drawings of the patent, is a bolt and a nut. Figure 3 of the drawings is illustrative.

Here the bumper is indicated by the Figure 7, 4 is the hinge, 13 the bolt on which screws the nut 15. By unscrewing the nut 15 and removing the bolt 13, the top of the bumper guard is released so that it may be swung on hinge 4. Plaintiff's commercial device dispenses with the bolt and nut as a fastening means and substitutes a latch, which is operated by merely pressing a handle.

It is not claimed that plaintiff was a pioneer in the manufacture or sale of bumper guards. In fact, prior to plaintiff's alleged invention, they had been on the market in many and various forms, and had been in common use on the front and rear bumpers of automobiles to prevent their overlapping.

The problem which plaintiff claims to have solved arose with the advent of the 1936 model cars, which were low swung and the bumpers of which were easily overridden by the older model cars whose bumpers were higher. There was also less space between the radiator and the front bumpers and greater likelihood of the radiator being damaged. The cars of this year contained a new style trunk with a door hinged at the top and opening from a point adjacent to the frame of the car. The spare tire which heretofore had been carried on the outside of the trunk was placed inside. The rear bumper was closer to the body of the car and a stationary guard bumper would not permit the trunk door to open, hence the importance of a guard which could be easily removed from the path of the door as it was opened. Various forms of guards were employed unsatisfactorily and to meet the existing situation, the patent in suit was applied for September 8, 1936, issued as heretofore related and the commercial device manufactured thereunder, exhibited in February, 1937.

Numerous prior art patents were introduced, which it is claimed anticipate the patent in suit. It seems to be conceded that the one nearest approaching plaintiff's device is No. 1,574,102 issued to McGregor February 23, 1926. Stress is also laid upon the application for patent filed by Willard L. Morrison on June 21, 1935, which is still pending before the patent office, being involved in an interference. The disclosure of his application being prior to the patent in suit is, no doubt, a proper reference.

McGregor says in his specification:

"The principal object of the invention is to provide a simple, inexpensive and efficient radiator guard or fender that may readily be attached to and wholly supported by any of the well-known forms of automobile bumpers in common use, although being more especially designed and adapted

for application to bumpers of the multiple flat bar type, and that shall be capable of being readily moved, without being detached from the bumper, from its normal operative position in front of the radiator to a lowered position wherein access may be readily had to the front of the car for cranking the motor or other purposes.

"The specific structure of fender or shield above described is not essential to the carrying out of the present invention and may be substituted by any other form or structure of grid equally well adapted for the application thereto of the hinged fender supporting means next described," and further says:

"When, however, the driver may be compelled to crank the motor or to obtain access to the front of the car for any other purpose, it is necessary only to withdraw the two locking screws 40 whereupon the entire grid frame—may be swung forwardly and downwardly to the positions indicated by the dotted lines in Fig. 3, thereby facilitating access to the front of the car. Reverse swing of the grid and the reapplication of the locking screws 40 manifestly restores the car to normal operating position."

We think it cannot be seriously controverted but that McGregor disclosed the idea of attaching a guard to the bumper by a hinge with a bolt and a nut for holding it in place, thus permitting it to be moved out of position and thereby facilitating access to the front of the car. It seems to us that plaintiff's effort to distinguish the McGregor device is more technical than real. It is true, McGregor describes his device as a radiator guard rather than a bumper guard, but this is not important. They are both attached to the bumper and for the protection of the radiator. It is said that the McGregor device is not positioned in the plane of the bumper bar. As illustrated in the drawings, this is true, but there is nothing in the specification or claims with reference thereto and we are unable to find anything in plaintiff's specification or claims which requires the guard to be in the plane of the bar. It is said the McGregor device can only be removed with the use of tools, as two bolts must be removed. The same may be said of plaintiff's device as heretofore illustrated in Figure 3. Even if McGregor required the guard to be stationed at a location other than the plane of the bumper, we do not believe that the

making of this change would constitute invention. Nor would it be novel to attach a guard to the rear bumper for the purpose of protecting the trunk of the car, based upon a theory taught and demonstrated by a guard attached to the front bumper for the purpose of protecting the radiator. The most which can be said for plaintiff's commercial device is that it is more artistic in appearance, with improved results, but in our judgment, the essential features were announced by McGregor. As was said in Burt et al. v. Evory et al., 133 U.S. 349, 358, 10 S.Ct. 394, 397, 33 L.Ed. 647:

"But a mere carrying forward or new or more extended application of the original thought, a change only in form, proportions, or degree, the substitution of equivalents, doing substantially the same thing in the same way, by substantially the same means, with better results, is not such invention as will sustain a patent."

We are also of the opinion that the patent before us is anticipated by the disclosure contained in the pending application of Morrison. He shows a hinged bumper guard to be attached to both the rear and front bumpers by a bracket and the guard member held in vertical position by means of a spring. The guard may be pulled away from its vertical position and when released the spring causes it to resume its original position. Here again the patent in suit merely represents some improvement which has to do mostly with the ease and facility of operation. Such improvement is found largely, if not entirely, in plaintiff's commercial device rather than in the principles enunciated by the patent. Any doubt which we might have in the matter is completely removed by the appraisement which plaintiff itself placed upon the Morrison disclosure. Plaintiff manufactured under the Morrison disclosure, a bumper guard under the trade-mark of Kant-Hook. This bumper was advertised and represented to the public as follows:

"No more hooked bumpers! No more damaged grilles, trunks, fenders or lamps. Kant-Hook Knee-Action prevents all danger and does away with annoying inconvenience resulting from two bumpers being hooked together. Gives real protection to the entire front and rear of car. Beautiful * Practical * Eliminates Personal Injury * Sturdy Construction."

It would be difficult to conceive how more could be claimed for the patent in suit or for any device manufactured thereunder from the standpoint of utility or otherwise, than was claimed by plaintiff for this device manufactured under the Morrison disclosure.

In view of the conclusion reached, there is no occasion for us to discuss the public acceptance and the recognition and acquiescence which it is claimed plaintiff's product received, nor the fact that licenses have been taken and royalties paid.

Each of the decrees of the District Court sustaining the validity of the patent in suit is reversed.