### CONTINENTAL FIBRE CO. v. FORMICA INSULATION CO.

(Circuit Court of Appeals, Sixth Circuit. March 6, 1923.)

No. 3697.

1. **Patents ⚬⟶328—Wright patent, 1,303,753 held invalid.**
    The Wright patent, No. 1,303,753, for a composite board, mainly useful for insulation in electric installations of high voltage, *held* invalid.

2. **Patents ⚬⟶17—Skillfulness and superiority do not constitute patentable invention.**
    Neither skillful selection of material, nor thoroughness of workmanship, nor superiority of product constitutes, in itself and without change of method or novelty of use, patentable invention.

Appeal from the District Court of the United States for the Western Division of the Southern District of Ohio; John W. Peck, Judge.

Infringement suit by the Continental Fibre Company against the Formica Insulation Company. Decree for defendant, and plaintiff appeals. Patent held invalid, and bill dismissed.

John C. Kerr, of New York City, and Alfred M. Allen, of Cincinnati, Ohio (Vernon E. Hodges, of Washington, D. C., Alfred M. Allen, of Cincinnati, Ohio, and John C. Kerr, of New York City, on the brief), for appellant.

J. Edgar Bull, of New York City, and John H. Lee, of Chicago, Ill. (Dyrenforth, Lee, Chritton & Wiles, of Chicago, Ill., Wood & Wood, of Cincinnati, Ohio, John H. Lee, of Chicago, Ill., and J. Edgar Bull, of New York City, on the brief), for appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

PER CURIAM. Infringement suit upon the Wright patent, No. 1,303,753, dated May 13, 1919, for a composite board, mainly useful for insulation in electric installations of high voltage. The District Court held the patent invalid. The nature of the patent and the character of the questions involved satisfactorily appear from Judge Peck's

⚬⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

opinion, which we append hereto (substituting claim 2 for claim 1).

[1] The issue is sharply presented by the action of the Patent Office, in which the examiner held that Wright had made an improvement over the Bakelite patent only in degree, while the Board of Examiners in Chief thought he had produced a new product. We are not able to think that the difference between a surface permeation and saturation and a saturation which goes to the center of the sheet is in itself anything more than a difference in degree, depending upon the existing physical conditions, and the advantage of getting as much saturation as possible we think must have been obvious to every one. It may be conceded that Wright attained a degree of saturation, and thereby obtained in the final product a degree of homogeneity never before attained, thus making the product more useful than anything earlier; but if, in so doing, he employed anything more than the natural efforts of a skilled workman (and in this art the extraordinary knowledge and skill of one short period was the commonplace of the next), it consisted in finding a peculiar material unusually capable of complete saturation by this liquid, and appellant's brief indicates a chief reliance upon this theory of real inventive merit; but the specification leaves us uninformed as to what such material is or how to find it.

Patentability, therefore, cannot rest upon any presumption that the material constitutes the discovery. We may even tentatively assume that the laminations of the original pile of sheets will not appreciably carry over into the finished product; but this assumption does not escape the inference that the result comes from soaking longer and pressing harder than before, unless it comes from things undisclosed.

We do not overlook the teaching of cases like the Minerals Separation Case, 242 U. S. 261, 37 Sup. Ct. 82, 61 L. Ed. 286, that patentability may lie in a change in the degree of one element in a composition; but in that case change made success out of failure and founded a new art. Here the old laminated board was a great commercial success; the new tended to supplant it, or go beyond it, only for special uses, as any improvement does.

Save as indicated by what we have said, and as to possibly excessive (but not vital) analogy found in two or three of the older patents cited, we approve and adopt Judge Peck's opinion and affirm the decree.

. The opinion of the District Court is as follows:

Action for injunction against infringement of the patent to Wright, No. 1,303,753, May 13, 1919, and an accounting. The answer denies validity and infringement of the patent.

The patent in suit lies in the art of making composite material by laminations of paper, cloth, or other like material, and a binder composed of a phenolic condensation product such as bakelite. It is now in common use for many purposes, and extensively employed for insulating. The [second] claim describes the asserted invention as follows:

["2. A composite product composed of laminations of paper or the like, each lamination being saturated throughout with approximate uniformity,

with a phenolic condensation product, and the whole being subjected to sufficient pressure and heat to form an approximately homogeneous product."]

That the defendant is producing a material which responds to the elements of this claim there is no doubt. The question, therefore, is upon the validity of the patent, more specifically whether it embodies novelty and patentable invention. It is not disputed that all the elements of this composite, except approximate uniformity of saturation of the fiber and approximate homogeneity, were old in combination. It only remains, therefore, to be inquired whether the prior art also discloses those two features so clearly as to require denial of validity to the patent. The presumption is in its favor, and the burden is on the defendant.

It cannot be successfully controverted that the idea of saturating as distinguished from the mere coating of fibrous material, in the building up of such laminated products, was an old one. Dixon, 1901, constructed a conduit pipe for electrical wires of laminations of paper "saturated and permeated" with asphaltum. Baekeland in 1909 described the manufacture of packing material by the "impregnation" of fibrous sheets with a phenolic condensation product, and in 1910 set forth a similar process in his patent for a machine element, such as a gear. His composite cardboard patent of 1910 will be considered later. In 1913, Conrad, in his composite gear patent, stated the effect of the heating and pressing together of sheets coated with bakelite to be "to further impregnate" them, and almost identical language is used in the same connection in O'Connor's patent for composite cardboard applied for in 1913. Barker's British patent of 1896, for a wood substitute, specifies the use of a fibrous material, such as cotton flannel, "thoroughly impregnated" with resin or gum, so as to produce a "rigid, inflexible, grainless, and waterproof material," by passing it through a vat of the gum, allowing it to partially dry, and then putting it under heated pressure rolls. A process which resulted in impregnation was in use by both parties before the application for the patent in suit. Thus a review of the prior art leaves no doubt that the practice of saturation was old—as old, perhaps, as the art itself. Indeed, it would be difficult to coat and compress permeable sheets of paper or cloth without a considerable degree of saturation. The fact that saturation or impregnation is called for in many of the prior art patents demonstrates that its desirability was recognized.

Turning, then, to the other feature of this product for which novelty is claimed—that is to say, "approximate homogeneity"—it is first necessary to define what is meant by the phrase. It cannot mean that the product is of the same identical material throughout, as it continues to be laminated; the fiber remains fiber, the bakelite remains bakelite, after the structure is complete. Indeed, the claim calls for a laminated product, which is in itself contradictory of the idea of homogeneity, if the latter be taken to indicate an absolute sameness of material throughout. It must, therefore, be taken to mean a "uniformity of structure." Webster.

Going once more to the prior art, we find that Haefely, in 1904, made laminated insulating tubes in which the application of heat and pressure served "to melt the binding varnish and compress the layers of paper and varnish into such intimate contact as to produce a tube of great compactness, as well as of uniform dimensions." It will be remembered that Barker's British patent, above referred to, describes the product as "grainless." Courtenay's hard fiber patent of 1889 characterizes his manufacture as a hard, dense substance. The Westinghouse booklet on Micarta Plate and Tubing Products, of January 1, 1913, represents that product (which was composed of laminations of paper and bakelite) to be "homogeneous" and "readily sawed, milled, tapped, threaded, etc." It is therefore quite obvious that a compact, dense, or grainless material of uniform structure was not novel on February 26, 1916, when Wright filed the application for the patent upon which the plaintiff relies. The several various elements of the composite were therefore old. Are they to be found in a prior combination? In other words, was the product itself in the prior art?

In 1910, Leo H. Baekeland, inventor of bakelite and many of its uses, filed his application for the patent for composite cardboard issued to him March 5, 1912. He describes a process of applying a phenolic condensation product to one or both sides of sheets of the ordinary grades of paper. The desired number of sheets being assembled, the composite is compacted by pressure. Heat is applied "in order to effect the transformation of the condensation product into an insoluble, infusible body." The same process, in practically identical language, is described by Wright (page 1, lines 60 to 100, and line 104 et seq.). While Baekeland did not, in his composite cardboard patent, lay stress upon impregnation, or approximate homogeneity of product, the evidence is clear, and there is no doubt but that such impregnation and approximate uniformity of structure would result from the following out of his process, provided a sufficiently permeable material and enough bakelite in a sufficiently liquid form were used. Permeable materials were at hand; paper, muslin, and duck were then, and are now, used in this connection.

While there is evidence tending to show that Wright found a paper more permeable and better adapted than any that was at hand at the time of Baekeland's application, there is no evidence to show any improvement in the quality of muslin or duck which could be, and was, used instead of paper; nor does the evidence indicate any alteration in the quality of phenolic condensation product as far as its ability to permeate and saturate is concerned. No change of formula appears concerning the quantity of that product used. It is in evidence that the Westinghouse Company's efforts in 1910, 1911, and 1912 were to put in all that could be got in and all that the paper would carry, but that the resin itself has been improved in recent years, resulting in a better product. Therefore any one skillful in the art, following the teachings of Baekeland's composite cardboard patent, using a well-known permeable material, such as muslin or duck, and bakelite, or the like, as now made, in the form and proportions

then common, would thoroughly saturate laminations of fibrous material and would produce a composite substance having substantial homogeneity.

It is said the former products would split along the line of the laminations, and such splitting is regarded by plaintiff's expert as proof of nonhomogeneity. The present product of both parties is so strong across the grain as not to be capable of being split. Wright did not specifically mention or claim this property for his product. Whether it comes within the fair definition of the term "homogeneity" is doubtful, to say the least. Century Dictionary. Wood, slate, and bituminous coal might fairly be called homogeneous, yet they may be split. But, assuming that incapability of being split is a property sufficiently described as "homogeneous," nevertheless it is found that such quality is the result of excellence of manufacture from materials and by methods then well known rather than an original conception or discovery of inventive character. Furthermore, the quality of toughness across the grain appears to have been, to a large extent, a matter of degree. It would seem that to deny the right to the quality in question to a composite cardboard produced under the Baekeland patent of the prior art would be simply to limit the excellence with which that product could be made by the process therein plainly described.

In testifying concerning the process by which his product is manufactured, the inventor, Wright, did not disclose any substantial variation from former practice, except the use of an especially made paper consisting of about two-thirds cotton and one-third wood fiber, the use of improved machinery for dipping the paper, in which the rolls revolve faster than the material is carried, so rubbing the bakelite into the fiber, and the allowing of a longer drying period for the sheets after saturation and before compression. But the patentee did not limit himself to the use of paper; the specifications being broad enough to cover also cloth, as muslin or duck, of which special preparation is unnecessary. Furthermore, it does not appear from the evidence that the prepared paper used by the plaintiff is the only one available for the purpose, but merely that the use of it, in the patentee's judgment, results in a better product. The defendant uses a pure cotton fiber paper, which is old. As to process, the defendant pursues the same method of dipping and pressing as it did in the year 1914, long before Wright's application, and yet obtains thereby the product which is relied upon by plaintiff as proof of infringement. Therefore plaintiff cannot predicate the patentability of its product upon the particular material or process used in its manufacture.

[2] All in all, it would seem that the patentee's advance over the prior art lies merely in a skillful selection of materials and in thoroughness of workmanship. The phrases, "every fiber waterproofed," "saturated throughout with approximate uniformity," an "approximately homogeneous product," indicate nothing more than doing thoroughly and well that which is disclosed by the prior art, particularly the Baekeland composite cardboard patent. The product—and it is borne in mind that this is a product or manufacture patent—is not distinguishable from that previously made except by its excellence. Nei-

ther skillful selection of material, nor thoroughness of workmanship, nor superiority of product constitutes, in itself, and without change of method or novelty of use, patentable invention. Hotchkiss v. Greenwood, 11 How. 248, 265, 13 L. Ed. 683; Hicks v. Kelsey, 18 Wall. 670, 21 L. Ed. 852; Burt v. Evory, 133 U. S. 349, 10 Sup. Ct. 394, 33 L. Ed. 647; Capital Sheet Metal Co. v. Kinnear & Gager Co., 87 Fed. 333, 31 C. C. A. 3; Florsheim v. Schilling, 137 U. S. 64, 11 Sup. Ct. 20, 34 L. Ed. 574; Westinghouse Electric Co. v. Formica Insulation Co. (C. C. A.) 272 Fed. 667.

It is therefore concluded that the patent in question is invalid, and that the bill must be dismissed.