**KALICH et al. v. PATERSON PACIFIC PARCHMENT CO.**

**No. 10119.**

Circuit Court of Appeals, Ninth Circuit.

July 30, 1943.

L. R. Geisler and Theodore J. Geisler, both of Portland, Or., for appellants.

Robert H. Eckhoff, of San Francisco, Cal. (A. W. Boyken, of San Francisco, Cal., of counsel), for appellee.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

GARRECHT, Circuit Judge.

This is an appeal from the judgment of the District Court of the Northern District of California, Southern Division, in a suit for the alleged infringement by appellants of Patent No. 2,124,412 and Reissue Patent No. 21,144. The patents, which were issued to one Wesley Dodge and then assigned to the appellee herein, allegedly cover a method of packing lettuce in parchment or other paper, both waterproof and moisture permeable, to protect the lettuce from direct contact with surrounding ice while keeping the lettuce in a cold but humid atmosphere. All three claims of the original patent the lower court held not infringed but ruled that Claims 4, 5 and 6 of the reissue patent, claims which do not appear in the original patent, are infringed by appellants.

The original patent was issued July 19, 1938 and the reissue patent July 11, 1939. The application for the reissue patent was denied at first for the reason that the new claims sought by the reissue patent did not cover any invention which applicant obviously intended to secure by the grant of the original patent and further that the claims were anticipated by prior art. After amendment, the reissue patent was allowed.

Commercial lettuce was first shipped by placing it in a shipping crate and alternating it with layers of ice. Gallagher obtained Patent No. 1,828,179 issued October 20, 1931, which provided for a refrigerated package for shipping vegetable products, comprising a crate, layers of non-absorbent material at top and bottom of crate, a

layer of cellu-cotton on the bottom layer, a layer of vegetable products on the cellu-cotton and crushed ice on top of the vegetable product, another layer of cellu-cotton, another layer of vegetable product and crushed ice, etc.

On May 30, 1933, the Grande Patent No. 1,911,361 was issued for a refrigerated shipping crate, having bottom and side-walls with moisture proof linings, horizontal layers of vegetables, horizontal layers of cracked ice in contact with layers of vegetables and partitions interposed between adjacent layers of cracked ice, said partitions having perforations of restricted capacity to allow the down flow of water from melting ice in contact with the vegetables.

The abandoned application of Don Taylor, Patent Application No. 530,955, provided for wrapping of vegetables in parchment paper or other paper saturated in a salt solution or other solution with a layer of the same absorbent paper between each layer of wrapped vegetable product.

The patent here in suit and the reissue patent were applied for and issued some years after the two patents and application for patent just described.

The primary question before the court is whether the broader claims of the reissue patent, namely, 4, 5 and 6, which were held infringed by the lower court, are valid.

The claims of the original patent are:

"1. A method of packing a product for shipment, said method comprising enclosing said product in a flexible, tough, water proof, moisture permeable material having the capacity of resisting prolonged contact with water without disintegration, arranging such wrapped product in a crate, contacting the so wrapped product with a quantity of ice fragments, and confining the ice so as to cause the meltage therefrom to flow over said wrapped product.

"2. A shipping package comprising a crate, a parcel arranged therein, a quantity of crushed ice distributed in said crate in contact with said parcel, and means for maintaining the parcel in contact with said ice, said parcel comprising food stuff wrapped with a tough, flexible, water proof, moisture permeable wrapper, having the capacity of resisting prolonged contact with water without disintegration.

"3. A shipping package comprising a crate, a parcel arranged therein, a quantity of crushed ice distributed in said crate in contact with said parcel, and means for maintaining the parcel in contact with said ice, said parcel comprising food stuff wrapped with vegetable parchment."

Claims 1, 2 and 3 of the reissue patent are the same as the claims of the original patent except that the word "crate" appearing in the original patent has been changed to "container" in the reissue, and the phrase "and means for maintaining the parcel in contact with said ice" in the original patent reads "and maintained by the container in contact with said parcel" in the reissue patent. Claims 4, 5 and 6, which do not appear in the original patent and which are the only claims in issue here, are:

"4. A shipping package for a vegetable product comprising a crate, layers of said product arranged in said crate, a quantity of ice distributed between the layers, and a shield of flexible, tough, substantially waterproof and moisture permeable material arranged in said crate between ice and adjacent faces of said layers of said product to maintain said ice and meltage therefrom out of contact with said product.

"5. A method of packing a vegetable product for refrigerated shipment, comprising: interdistributing a quantity of said vegetable product with a quantity of comminuted ice in a shipping container, and protecting said vegetable product from wetting by meltage from said ice, by interposing, during said interdistribution of ice and vegetable product, a shield of flexible, tough, substantially waterproof and moisture-permeable material having an extent adequate to isolate the distributed vegetable product from wetting by meltage as developed.

"6. A shipping package for a vegetable product, comprising: a container, a quantity of ice within said container, a quantity of said vegetable product within said container and distributed therein in heat-transferring relationship with said ice, and a flexible, tough sheet of a substantially waterproof, moisture-permeable material interposed between said distributed ice and vegetable product substantially shielding said vegetable product from wetting by ice meltage yet permitting heat and limited moisture-transfer there-between."

The appellee's patent differs from the Gallagher patent in this—the original

patent teaches the use of parchment paper and isolates the vegetable product from the ice by wrapping the former according to the illustrated manner in the patent application. Gallagher was the first to advocate the feeding of the lettuce through the butts and reducing the temperature in the crate by using a cushion of absorbent material and he also emphasized the protection of the lettuce from bruising by ice, but he did not isolate the lettuce from the ice. In the reissue patent, the vegetable product is arranged in layers as is the ice in much the same manner as Gallagher did it with the change in placing an extra sheet of paper between the ice and the vegetable product.

The Grande patent differs from the original patent in issue in that the original patent describes only a completely wrapped package of vegetable produce on which are distributed ice fragments. The Grande patent and the reissue patent both place the vegetable products and the ice in layers separated by some kind of paper, with the improvement in the reissue patent of putting the extra sheet of paper between the ice and vegetable product throughout.

The Taylor application for patent also, as the original Dodge patent, provides for wrapping the vegetable product in parchment paper, but Taylor used a solution around the wrapped product and Dodge used ice.

There was evidence that as far back as 1928 other packers and shippers had been experimenting with the packing of vegetable products in ice for shipment, and the using of different kinds of paper, including parchment paper, and variations of the Gallagher and Grande methods of packing, even to the point of using paper between all layers so that the ice was isolated from the vegetable produce shipped. There was evidence that parchment paper had been used since 1926 in the packing of fish and in this use isolating the fish from the ice surrounding it.

In respect to the reissue patent, and particularly, Claims 4, 5 and 6, Dodge has developed a system of packing produce in ice which has the best features of the earlier patents with some mechanical improvement. Both Gallagher and Grande had developed methods of packing in alternate layers of vegetables and ice, and Taylor, who later abandoned his application, was the first to use the idea of wrapping the product in parchment paper, although he used a solution for moisture rather than ice.

Grande and Gallagher did not use the precise type of paper nor did they absolutely isolate the lettuce from the ice. Grande used cellu-cotton, but some who later used variations of the Grande and Gallagher methods used parchment paper. The Grande and Gallagher patents were old in the field before Dodge entered it in 1935. He seems to have fully studied the problem and worked out the use of parchment paper and also the idea of isolating the vegetable product completely from the ice. He knew by experimentation that parchment paper would permit moisture to go through to the vegetable product and at the same time hold out the excess moisture. The patent office itself advised Dodge that "It is considered that * * * it would not be invention to use a vegetable parchment."

The essential difference between appellee's practice under the reissue and that of prior inventors and prior use is that Dodge used parchment paper exclusively and packed paper between the ice and vegetable product; he did nothing but improve with a minor difference which would occur to one skilled in the art a system of packing lettuce or vegetable products, which did not amount to invention. Skill by one of the trade rather than invention was involved in the solution here. Patentees are not entitled to a monopoly for the judicious use of materials the use of which would produce the result to be expected from such selection. Recognition is not invention. Continental Fibre Company v. Formica Insulation Company, 6 Cir., 287 F. 455; Vitamin Technologists, Inc., v. Wisconsin Alumni Research Foundation, 9 Cir., 136 F.2d 318; Aero Neck-Band & Collar Company v. Beaver Mfg. Co., 2 Cir., 97 F.2d 363, 365.

In Re Haas, 81 F.2d 408, 410, 23 C.C. P.A., Patents, 928, which involved an alleged invention relating to the method of slicing bread and wrapping it by a particular mechanism resulting in a wrapped product free from germs and micro-organisms, the court held:

"With respect to appellant's claim that he was the first to appreciate the fact that in slicing bread it was the knives or blades carrying mold spores and other micro-organisms into the interior of the loaf that caused the rapid development of mold and

other deteriorating organisms between the slices, we are of the opinion that this was merely the ascertainment of a scientific fact. This being true, we are in agreement with the Patent Office tribunals that there is nothing in any of said claims describing structure or method that, in view of the references, would not be obvious to one skilled in the art, without the exercise of the inventive faculty.

"While appellant's apparatus and methods are no doubt novel in the sense that the complete structure and steps are not shown in the prior art, that is not sufficient to make the claims patentable; there is also required the exercise of the inventive faculty. Thompson v. Boisselier et al., 114 U.S. 1, 5 S.Ct. 1042, 29 L.Ed. 76."

There is the old rule that one is not entitled to a patent who merely makes a change in form, proportion or degree, by substantially the same means even though the changes he makes produce better results. Burt v. Evory, 133 U.S. 349, 10 S.Ct. 394, 33 L.Ed. 647; Market Street Railway Co. v. Rowley, 155 U.S. 621, 15 S.Ct. 224, 39 L.Ed. 284; In re Prescott et al., 49 F.2d 825, 18 C.C.P.A., Patents, 1379; Monckmeier v. Erie Mfg. Co., 7 Cir., 98 F.2d 369, 371; Wagner v. Meccano, Ltd., 6 Cir., 246 F. 603, 608 and citations.

In regard to the reissue patent, irrespective of the matter of invention, the question is whether in the light of the disclosures contained in both patents, the reissue covers the same invention. It must be apparent from the face of the instrument that what was embraced in the reissue was intended to have been taught and secured by the original. The invention must have been shown in the original patent. A reissue patent that broadens the claims to cover a new and different combination is void even though the result attained is the same as that brought about by following the process claimed in the original patent. United States Chemicals, Inc., v. Carbide Corporation, 315 U.S. 668, 675 and 678, 62 S.Ct. 839, 86 L.Ed. 1105; General Electric Company v. Richmond Street & Interurban Railway Co., 7 Cir., 178 F. 84; Heidbrink et al. v. Charles H. Hardessen

Co., 7 Cir., 25 F.2d 8; James v. Campbell, 104 U.S. 356, 26 L.Ed. 786; Topliff v. Topliff, 145 U.S. 156, 12 S.Ct. 825, 36 L.Ed. 658; Lorraine et al. v. Townsend et al., 9 Cir., 8 F.2d 673.

The original Dodge patent provides for a wrapped package of vegetable products in a crate and then sprinkled with ice fragments. The reissue patent describes a method of packing by lining the crate with paper, and then placing a layer of vegetable product, another sheet of paper, ice, another sheet of paper, another layer of vegetable products, a sheet of paper, ice, etc., until the crate is filled.

When viewed in connection with the descriptive parts of the original claims, the claims of the reissue although showing some relation to the original patent are still too widely different from it and based to such an extent upon the enlargement of the description of the original patent that they must be construed as embracing more than was claimed or described in the original.

The appellee bases its position here on the judgment of the lower court that the original patent and the claims of the reissue patent which are the same are not infringed, whereas, Claims 4, 5 and 6 of the reissue patent, which are the new claims, are infringed. This leaves the appellee in a dilemma. Either the appellee must say the original patent covered no invention, or the infringed claims of the reissue patent must cover an entirely different invention from that of the original patent, which is not infringed. Consequently, if the reissue patents covers the same invention as the original, it must necessarily cover no patentable invention; or, if the reissue does not cover the same invention, it is not a valid reissue of the original patent.

Claims 4, 5 and 6 are not valid as they do not cover any invention and further do not embrace the purported invention claimed by the original patent.

Reversed.

HANEY, Circuit Judge, did not participate in the consideration or decision of this case.