324 F.2d 82
 139 U.S.P.Q. 220
 Warren H. LOCKWOOD, and Mid-West Metallic Products, Inc., Appellants,
v.
LANGENDORF UNITED BANKERIES, INC., and Banner Metals, Inc.,
Appellees.
LANGENDORF UNITED BAKERIES, INC., and Banner Metals, Inc., Appellants,
v.
Warren H. LOCKWOOD and Mid-West Metallic Products, Inc., Appellees.
 No. 18159.
 United States Court of Appeals Ninth Circuit.
 Oct. 28, 1963, Rehearing Denied Dec. 2, 1963.
 
 Bronson, Bronson & McKinnon, and John F. Ward, San Francisco, Cal., Meyer, Baldwin, Doran & Egan, and George S. Baldwin, and Roudebush, Adrion, Brown, Corlett & Ulrich, and Myron W. Ulrich, Cleveland, Ohio, for appellants.
 Boyken, Mohler & Foster, Dirks B. Foster, San Francisco, Cal., Keith D. Beecher, Los Angeles, Cal., Warren T. Jessup, Hollywood, Cal., and Fidler, Beardsley & Bradley, and Roy E. Petherbridge, Chicago, Ill., for appellees.
 Before HAMLIN, JERTBERG and DUNIWAY, Circuit Judges.
 DUNIWAY, Circuit Judge.
 
 
 1
 This is an action for patent infringement in which the defendants counterclaimed for declaratory relief. Both sides appeal and consequently we will refer to them as plaintiffs and defendants, rather than as appellants and appellees. Plaintiff Lockwood is a patentee of, and plaintiff Mid-West Metallic Products, Inc. is the licensee under, patent No. 2,931,535 (hereafter referred to as '535) issued April 5, 1960, and also reissue patent No. Re. 24731. The latter is a reissue of patent No. 2,782,936 (hereafter referred to as '936); the original patent '936 was issued on February 26, 1957 and the reissue on November 3, 1959.
 
 
 2
 In the complaint the plaintiffs charged that the defendant Langendorf United Bakeries, Inc, was infringing patent '535. Thereafter the defendant Banner Metals, Inc., the manufacturer of the device that was claimed to infringe, was permitted to intervene and was named as a defendant in the complaint. In their counterclaim for declaratory relief defendants asserted that plaintiffs claimed that they were also infringing Re. 24731 and asked for declaratory relief, both as to its validity and the validity of '535, and as to infringement of both patents.
 
 
 3
 In a written opinion, the court concluded that the defendants' device known as a Pal-a-teer, Exhibit 9, did not infringe patent '535, refused to hold that patent '535 is invalid, but did state that it should be narrowly limited, held that claim 7 of Re. 24731 is invalid and is not infringed by Exhibit 9, and that another device of the defendants, Exhibit O, does not infringe either patent '535 or Re. 24731. It made elaborate findings of fact in support of these conclusions and entered judgment accordingly.
 
 
 4
 Plaintiffs assert that patent '535 is valid and that the finding of no infringement is erroneous, that there was no justiciable issue as to possible infringement of '535 by Exhibit O or of Re. 24731 by Exhibit 9 or Exhibit O, that claim 7 of Re. 24731 is valid, that Exhibit 9 does infringe that claim, and that Exhibit O does infringe patent '535 and Re. 24731. Defendants assert that the court erred in not finding patent '535 invalid, particularly claims 19 and 20 of that patent, and in not finding the entire patent Re. 24731 invalid, but limiting its finding to claim 7 of that patent.
 
 
 5
 We conclude that the judgment must be affirmed. Much of this opinion is taken from the careful opinion of District Judge Sweigert, and those portions appear in quotation marks.
 
 
 6
 'BACKGROUND OF THIS SUIT.
 
 
 7
 'In 1952, plaintiff, Lockwood conceived an idea for metal wire receptacles or baskets suitable for the handling and display of bakery products and similar merchandise. These receptacles could be tiered in vertical position and, when not in use, could be nested one within the other in like vertical position. The tiering or nesting of the receptacles could be accomplished without need for any moving parts and, further, without need for 'rotating' one receptacle about the other to bring it into nesting position with the lower receptacle as required in some earlier types of tierable-nestable receptacles without moving parts. Lockwood applied for a patent which was finally issued in 1957 as Lockwood No. 2,782,936. * * *
 
 
 8
 'The eventual embodiment of Lockwood's application '936 was Exhibit 1 herein-- a receptacle manufactured and sold commercially by Mid-West in substantial quantity. This Exhibit 1 receptacle consists of two metal wire receptacles, or baskets, each so constructed that its bottom is slightly longer than its top dimensions. In tiered vertical position the bottom of an upper receptacle is supported by the top ends of a lower receptacle. To bring the two receptacles into nested position it is necessary to raise the top receptacle-- and by means of a 'lateral shift,' followed by a 'tilting motion'-- bring its ends under the top ends of the bottom receptacle and into clearway for nesting position with the latter. The characteristic of the receptacles is that they can be tiered or nested in vertical position without 'rotation' and with a so-called 'tilting' manipulation only.
 
 
 9
 'Subsequently, in 1956, Banner Metals, a competitor in the field, commenced the manufacture and sale of tierable-nestable receptacles, not in issue here, based upon an idea and design of their engineer, Wilson. Later, in 1957, Mid-West, claiming that those receptacles infringed Lockwood Patent '936, which had been issued in 1957, commenced patent infringement litigation against Banner in Ohio. The litigation was subsequently broadened to include a further charge that these Banner receptacles also infringed a Lockwood Reissue Patent, No. 24731, a reissue of the original Lockwood '936, which reissue had been granted to Lockwood in 1959. That litigation continued until eventually settled in October, 1960, in a manner hereafter described.
 
 
 10
 'In 1957, Lockwood, still working with Mid-West, conceived another idea which he considered to be better than the idea claimed in Lockwood '936 as then embodied in Mid-West's Exhibit 1 receptacles. These new receptacles would be so constructed that the bottom of the upper receptacle * * *, could be brought from tiered into nested position without the 'tilting' motion implicit in Exhibit 1 and merely by raising the upper receptacle, and 'shifting' it slightly, horizontally and laterally, beyond, around and under support points and into clearway for nesting within the lower receptacle.
 
 
 11
 'On February 7, 1957, Lockwood filed an application for a patent on this last idea which patent was eventually issued April 5, 1960, as Lockwood 2,931,535-- the patent asserted by plaintiffs in this litigation. Lockwood, considering that he could have claimed this feature in his first patent, Lockwood '936, also applied for on January 13, 1959, and was eventually granted, a reissue of '936, being Re. 24,731 already mentioned-- claim 7 thereof being a generic claim that purported to embrace both kinds of manipulation-- the tilting motion implicit in the Exhibit 1 type receptacles produced by Mid-West and the lateral shift motion characteristic of his new idea. Neither Mid-West nor Lockwood ever produced for commercial use, any embodiments of this lateral shift manipulation-- only the Exhibit 1 type tilting manipulation receptacle was in production by Mid-West. At the trial of this case, a model, claimed to be an embodiment of Lockwood '535 and of Claim 7 of the Reissue Patent, and involving the lateral shift type manipulation, was introduced and is referred to herein as Exhibit 8.
 
 
 12
 'Meanwhile, Banner's engineer, Wilson, in February, 1959, also conceived another idea and in April, 1959, filed a still pending patent application for tierable-nestable receptacles which Banner embodied in a design, Exhibit 9 herein, the receptacle accused by Mid-West in this suit. This receptacle, like the embodiment, Exhibit 8, could be tiered and nested in vertical position by a similar lateral shift and without any need for a tilting motion.
 
 
 13
 'Banner's new, Exhibit 9 type receptacle, the accused herein, was discussed with a prospective customer, Langendorf, one of the defendants herein, in February and March, 1959, and later in 1959 it was sold in quantity for commercial use to both Langendorf and Safeway Stores. In early 1960 Banner made arrangements with Echo Products Co., for distribution of Banner Products, including Exhibit 9 type receptacles * * *.
 
 
 14
 'Lockwood actually saw some of these Exhibit 9 receptacles for the first time in April, 1959, and he then sent photographs and samples to Milwest which in turn forwarded them to its Cleveland, Ohio, patent attorney. After Lockwood's discovery of Banner's Exhibit 9 type receptacles, through his contact with Langendorf, he filed in May, 1959, an additional Claim 20 to his pending '535 application and later, in November, 1959, he filed additional claims, 21-28. Through 1960, Midwest asserted infringement charges against Banner and its customers and on April 25, 1960, two weeks after the final issue of Lockwood '535, commenced this suit against defendant Langendorf charging that Langendorf's continued use of Exhibit 9 type receptacles purchased by it in late 1959 constituted infringement of Lockwood '535.
 
 
 15
 'Banner cancelled its distribution arrangements with Echo Products and intervened in this action on behalf of Langendorf. Whereupon plaintiffs amended their complaint to charge Banner, itself, with infringement.
 
 
 16
 'In October, 1960, during the pendency of this litigation, Banner made a settlement with Mid-West of the Cleveland, Ohio, litigation under which Banner agreed not to manufacture an early 1956 Wilson design-- a design which, although it gave rise to the Cleveland litigation, is not here involved. Mid-West agree not to assert its claims under Lockwood '936 or the reissue thereof against receptacles sold by Banner prior to October, 1960. There was, however, no agreement by Banner not to manufacture Exhibit 9 type receptacles, i.e., the 1959 Wilson idea, nor was there any agreement by Mid-West to waive its claims under its recently issued, April 4, 1960, Lockwood '535.
 
 
 17
 'EXHIBIT 8 (LOCKWOOD '535) vs. EXHIBIT 9, THE ACCUSED.
 
 
 18
 'At the outset it should be observed that Exhibit 9, the accused article, and Exhibit 8, the Lockwood '535 patent model, are not similar in their structural appearance. They are similar, however, in that both accomplish the same result-- metal, basket type receptacles which can be tiered and nested in vertical position, without need for either rotational or tilting manipulation, and merely by a lateral, horizontal shift manipulation. Exhibit 8 accomplishes this result by means of a wire metal structure with a series of zig zags in the side wire near the top, upon which the bottom wires of an upper receptacle rest, when the two are tiered, each bottom wire finding support on a corresponding side wire. Exhibit 9 accomplishes the result by means of a wire structure which so uses metal wire as to provide four loops near the four corners of the bottom which rest over four posts formed by upwardly bending a portion of the top wire of a lower receptacle as the wire runs around the perimeter of the receptacle.
 
 
 19
 'Lack of structural similarity of appearance, although not at all determinative, is a factor for consideration in determining the ultimate question whether the accused article does in fact so copy and so use the idea, the principle, the teaching of the patent as to accomplish the same result by substantially similar or equivalent means.
 
 
 20
 'Expert testimony was introduced by plaintiffs at the trial to the effect that Claims 19-28 of Lockwood '535 read upon Exhibit 9, the accused receptacle, and also upon Exhibit 8, the model constructed according to Lockwood '535. Defendants, on the other hand, introduced expert testimony to the effect that these claims could not be read upon Exhibit 9.
 
 
 21
 'This conflict arose out of different constructions placed by the respective experts upon Claim 19 of Lockwood '535 in two principal respects of which the most important is the limitation in Claim 19 concerning dimensions of the lower part of an upper tray lying inside the dimensions of the upper part of a like lower tray.
 
 
 22
 'Exhibit 9, the accused, is so constructed that, when tiered, the lower part of an upper tray does not lie inside the dimensions of the upper part of a like lower tray. This is true whether the term 'inside' is referable to a horizontal plane or to a vertical depth. Only after an upper tray has been raised and shifted laterally and horizontally downward through a clearway into ready for nesting position does the lower part of an upper Exhibit 9 type tray lie inside the dimensions of the upper part of a like lower tray.
 
 
 23
 'By way of contrast Exhibit 8, the patent model, is so constructed that, when tiered, the lower part of an upper Exhibit 8 type tray does lie literally inside the dimensions of the upper part of a like lower tray. This is also true of another patent '535 model, Exhibit 11, constructed by plaintiffs according to the rotational type figures of Lockwood '535.'
 
 
 24
 An examination of both models (8 and 11) indicates that it is the fact that the bottom of the upper receptacle lies within the top of the lower that gives stability to the upper when in a tiered position. Unless this were so, the support points at the bottom of the upper could slip off of the support points near the top of the lower.
 
 
 25
 'Of course, both Exhibit 9 and Exhibit 8 (and also Exhibit 11) are all so constructed as to meet this limitation of Claim 19 after an upper tray has been raised, shifted beyond certain support points and then vertically downward into a ready for nesting position. Obviously, whenever trays are so designed as to test one within the other, the lower part of an upper tray must necessarily lie inside the dimensions of the upper part of a like lower tray when the two trays are actually in the ready for nesting position. Otherwise, nesting could not be accomplished. * * *
 
 
 26
 'It seems, to the Court, therefore, that this limitation of Claim 19 should be interpreted as applicable to the receptacles in tiered rather than in ready for nesting position. In confirmation of this construction. and also as indicating the significance of the limitation, it should be noted that Claim 19, in which the limitation is found, was added by Lockwood to his pending application '535 upon the request of the Patent Office * * * upon the ground that, without such claim, the '535 invention would not be distinguishable from Lockwood's earlier patent '936 which called for receptacles (Ex. 1) so constructed that, when tiered, the lower part of an upper receptacle lay, not inside, but above, or at least upon support points on the upper part of a like lower tray so that the lower part of an upper receptacle would lie inside the dimensions of the upper part of a like lower tray only after manipulation by a tilting manipulation into ready for nesting position. A similar conflict arose in the reading of the experts of Claim 20 of Lockwood '535.
 
 
 27
 'A conflict in the testimony of the experts also rose out of different constructions placed by them on another limitation of Claim 19 concerning a generally vertically extending clearway from directly above each lower point of support of an upper receptacle extending upwardly to the upper points of support of an upper receptacle when two like trays are nested. Admittedly, clearways when defined in such a claim as Claim 19 of Lockwood '535, constitute structural elements of the claim and to establish infringement this element, or its substantial equivalent, must be found in the accused article.'
 
 
 28
 It appears that, as used in patent '535, the word 'clearway' merely means an open space in the lower receptacle through which the lower 'support points' of an upper receptacle can move downward when the upper is being nested in the lower.
 
 
 29
 'Exhibit 9, the accused article, is so constructed that, when two such receptacles are in nesting position, the space between the lower point of support of an upper receptacle and the upper point of support of a lower receptacle is interrupted by a bar * * * which does not permit normally interfering parts to pass when the receptacles are nested but, on the contrary, impedes the passing of such parts to hold the nested receptacles in a spaced position-- a structural feature claimed to prevent the nested receptacles from jamming.
 
 
 30
 'Claims 21-28 of Lockwood '535 are admittedly dependent upon Claim 20 and, therefore, a finding that Claim 19 and Claim 20 are not infringed by Ex. 9, could not possibly be affected by further limitations added by Claims 21-28.
 
 
 31
 ' Whether claims 19 and 20 are infringed by Ex. 9 is an issue which must be determined in the light of certain well-settled principles. Even if a claim can be read in terms upon an accused article, infringement does not necessarily follow unless it can be found as an ultimate fact that the article uses the inventor's idea as embodied in the inventor's design and drawings and that there is sameness or equivalence of function and means. See: Trenton Industries v. (A. E.) Peterson Mfg. Co., 165 F.Supp. 523, 529 (S.D.Calif.1958); Grant v. Koppl, 99 F.2d 106 (9th Cir. 1938); McRoskey v. Braun Mattress Co., 107 F.2d 143, 147 (9th Cir. 1939).
 
 
 32
 ' The mere fact that the accused article performs the same function and achieves the same result as the patented article does not necessarily establish infringement unless it can be found that this is accomplished in substantially the same way and where, as in this case, the art is fairly crowded and the main elements of the patent are found or indicated in prior art, this issue should be determined narrowly rather than liberally. If in fact, not merely colorably, the accused article departs from the teaching of the patent in the means by which it achieves the result there is no infringement. Johnson & Johnson v. Carolina Lee Knitting Co., 258 F.2d 593, 597 (4th Cir. 1958). See: National Latex Prod. Co. v. Sun Rubber Co., 274 F.2d 224, 244 (6th Cir. 1959); Simmons Co. v. (A.) Brandwein & Co., 250 F.2d 440, 448 (7th Cir. 1957); Robertson Co. v. Klauer Mfg. Co., 98 F.2d 150, 159 (8th Cir. 1938).
 
 
 33
 ' In a combination patent, such as involved in this case, every element of a particular claim is presumably essential and, therefore, every element of the claim, or its functional equivalent, must ordinarily be found in the accused article. See: Q-Tips, Inc. v. Johnson & Johnson, 207 F.2d 509 (3rd Cir. 1953).
 
 
 34
 ' Where, as in this case, no embodiments of the patent asserted by plaintiff have ever been produced for commercial use, that circumstance is one calling for a narrow rather than a liberal construction of its claims. See: Thompson v. Westinghouse Elec. & Mfg. Co., 116 F.2d 422, 425 (2d Cir. 1940); Glendenning v. Mack, 159 F.Supp. 665, 668-669 (D.Minn.1958).
 
 
 35
 ' Also where, as in this case, an applicant has been required to narrow his claim in order to distinguish it, any contention of the applicant that such claim is not essential or that it is infringed by an equivalent in the accused article, should be considered with care and subjected to a narrow rather than a liberal construction. See: I.T.S. Rubber Co. v. Essex Rubber Co., 272 U.S. 429, 443 (47 S.Ct. 136, 141, 71 L.Ed. 335) (1926).' See also Oregon Saw Chain Corp. v. McCullough Motors Corp., 9 Cir., 1963, 323), F.2d (758), Oct. 9, 1963.
 
 
 36
 ' In the light of these principles the Court concludes that the limitations of Claims 19 and 20 concerning dimensions lying inside and concerning clearways are not found either literally, substantially or equivalently in Ex. 9; that Ex. 9, although accomplishing a similar result as the teaching and claim of Lockwood '535 (e.g., 8), does so by means which are significantly different and that, therefore, there is no infringement of Lockwood '535.'
 
 Validity of patent '535
 
 37
 Defendants assert that patent '535, or at least claims 19 through 28 of that patent, are invalid, and that they are entitled to have a judgment declaring that invalidity. The court did consider this question, but did not decide that these claims were either valid or invalid. It did note that no evidence of any sort was presented as to infringement of claims 1 through 18 of the patent. Plaintiffs expressly disclaimed reliance on those claims as against defendant's devices. Conclusion of law 9 states:
 
 
 38
 '9. Any invention residing in patent 535 must reside in the specific structure disclosed in the patent. If construed with sufficient breadth to cover either Exhibit 9 or Exhibit O, the claims of Lockwood 535 are invalid.'
 
 
 39
 The judgment, however says nothing about the validity of patent '535.
 
 
 40
 The trial court disposed of the validity issue in the following manner, with which we agree:
 
 
 41
 'Defendants also contend that Lockwood '535 is invalid in that its claims do not patentably distinguish, and can be read upon, prior art in the field.
 
 
 42
 'Defendants introduced, as an example of prior art, Exhibit I, a representation of structures shown in Faulkner 2-252-964-- a tierablenestable receptacle which, without moving parts, is nested into a lower like receptacle by a 180 degrees rotational manipulation of the upper receptacle above the lower receptacle to align it with clearways that make possible nesting, as well as tiering, in exact vertical position.
 
 
 43
 'It is true that the rotational shift implicitly required in Faulkner is different from the non-rotational, horizontal, lateral shift manipulation implicitly permitted by some of the embodiments of Lockwood '535, e.g., (Ex. 8).'
 
 
 44
 Other embodiments do use a rotational shift, but of only a few degrees, as in another sample constructed according to the patent, Exhibit 11.
 
 
 45
 'Applicant Lockwood, himself, however, conceded before the Patent Office * * * that the distance of the shift implicit in '535 was immaterial to the patent and not part of the invention. As far as the kind of shift is concerned, there is no claim under either claim 19 or 20 of '535 to any particular amount of shifting nor to any particular kind of shifting-- rotational or linear. In fact, '535 is claimed to broadly include both kinds of shift-- a * * * rotational shift, as in Ex. 11, and the linear, horizontal shift, as in Ex. 8.
 
 
 46
 'Defendants also introduced, as an example of the prior art, Ex. J, a representation of structures shown in Blom 2-684-766-- a tierable-nestable receptacle which, without moving parts and without rotational manipulation, is nested in a lower like receptacle by raising the upper receptacle, shifting it slightly, horizontally and laterally, beyond certain support points and then downward through clearways into the nesting position. It is true that this Blom patent, teaching a positioning of the upper and lower support points out of vertical registration one with the other, as distinguished from upper and lower support points in vertical registration one with the other as taught in Lockwood '535, produced the result that, if a plurality of the Blom receptacles were nested, the nested receptacles would tend to offset from the vertical and, upon reaching a center of gravity, would, conceivably fall over-- unlike Ex. 8, Lockwood '535, and also Faulkner, which will both tier and nest in exact vertical alignment. We will assume that a plurality of receptacles is impliedly contemplated by an invention for tierable-nestable receptacles, and that tiering and nesting of a plurality of receptacles in vertical position, as accomplished in Faulkner and Lockwood '535, is an advantageous idea. The point, however, is that the idea of such accomplishment by a shifting manipulation into clearways was not new.
 
 
 47
 'Defendants introduced the Blom embodiment, Ex. J, merely to show that the idea of a lateral, horizontal shift manipulation, as well as rotational shift manipulation, was part of the prior art and that, notwithstanding the offset from the vertical inherent in Blom, Ex. J, one skilled in the art, having both Faulkner and Blom before him, could by structural modification accomplish substantial vertical tiering and nesting of receptacles by either the horizontal shift manipulation or by rotational shift manipulation. That was accomplished in Ex. K, a model, not of any prior art, but merely an illustration that a modification of the teaching of Blom, Ex. K, i.e., slanted clearway slots instead of vertical clearway slots, would accomplish substantial vertical registration of the receptacles.'
 
 
 48
 Plaintiffs assert that it was error to receive exhibit K in evidence. It was merely a physical embodiment of a structural modification of the Blom patent that was testified to by an expert witness. It did not purport to be a reproduction of the article described in Blom. We see no error and no prejudice. (See Dresser Industries, Inc. v. Smith-Blair, Inc., 9 Cir., 1963, 322 F.2d 878, p. 890.)
 
 
 49
 'From the foregoing it is clear that '535 presented no novel, patentable invention of accomplishing the tiering and nesting of receptacles in vertical registration by means of the shifting of an upper receptacle from tiered position to align it with clearways in the lower receptacle for nesting in the same vertical registration.
 
 
 50
 'It may be that the accomplishment of tiering and nesting of receptacles in vertical registration by a shifting manipulation somewhat different in degree or even in kind, from the 180 degrees shift implicit in Faulkner is a new meritorious, commercially useful contribution to the art and that a structure to accomplish that purpose could conceivably involve the amount of originality and ingenuity, over and beyond mere novelty and utility, necessary to sustain patentability for a combination of old elements under the increased requirements of many recent decisions of the Supreme Court.
 
 
 51
 'In any event, the most that can be said is that any 'invention' in '535 must reside in the specific structure of its particular receptacles and not in the art or the article itself. In other words, '535 may be valid as an 'improvement' patent, assuming it possesses the requirements of patentability, by its new useful combination of the several parts of which it is composed, or by a modification of the devices which enter into construction, as, for example, the structural device of positioning like parts over like parts, as in '535 (and also '936), as distinguished from the structure in that respect of Blom and Faulkner, in order to accomplish tiering and nesting in exact vertical position by means of a horizontal, linear shift or by a rotational shift considerably less than in Faulkner.
 
 
 52
 'In such case, however, the patent right of '535 is limited to the specific structural 'improvement' which accomplishes that result, as distinguished from the art or the article itself. (69 CJS, Patents 13 (1951)).
 
 
 53
 'That this is the situation here presented is indicated further from the fact that, before the Patent Office issued '535, it pointed out that the application, as first presented, did not differ in any material respect from the earlier Lockwood '936, which, itself, constituted part of the prior art. It will be recalled that this '936 had taught tiering and nesting of receptacles in vertical registration by means of a shifting manipulation, neither rotational nor horizontal, but a so-called 'tilting' manipulation. It was only after applicant distinguished over '936 by adding a specific structural 'dimensions-lying within' limitation, already discussed, that '535 was approved upon the theory, as stated by applicant, that such added limitation would specifically and structurally distinguished over '936 by making such tilting manipulation impossible under '535.
 
 
 54
 'Lockwood '535 construed in any way other than we have construed its 'dimensions-lying in' claim for purposes of infringement, would be invalid as having been otherwise anticipated by Lockwood '936. In view of this conclusion, already applied to the infringement issue, it is not necessary to decide whether, thus construed, '535 is, nevertheless, invalid in view of the prior art shown in Faulkner and Blom.'
 
 
 55
 The law is not entirely clear as to whether, in such a case as this, the court is required to adjudge the validity or invalidity of the patent in suit. Undoubtedly, it had the power to adjudge it invalid. (Altvater v. Freeman, 1943, 319 U.S. 359, 63 S.Ct. 1115, 87 L.Ed. 1450.) It appears, however, that it would usually be error to adjudge it valid, in the face of a finding of non-infringement. (Electrical Fittings Corp. v. Thomas & Betts Co., 1939, 307 U.S. 241, 59 S.Ct. 860, 83 L.Ed. 1263; Altvater v. Freeman,supra). To do so, says the Supreme Court, would be to decide a hypothetical case.
 
 
 56
 In Altvater, the Supreme Court sustained a judgment that held, on the complaint, that there was no infringement, and, on a counterclaim, that the patent was invalid. See also, Hawley Prod. Co. v. United States Trunk Co., 1 Cir., 1958, 259 F.2d 69. It is said in Sinclair & Carroll Co. v. Interchemical Corp., 1945, 325 U.S. 327, 330, 65 S.Ct. 1143, 1145, 89 L.Ed. 1644 that it 'will usually be the better practice' to inquire 'fully into the validity of (the) patent.' However, Judge Learned Hand, in Harries v. Air King Prod. Co., 2 Cir., 1950, 183 F.2d 158, 162-163 expressed the opinion that this language 'was certainly not put in the form of a peremptory direction, but rather of a cautionary admonition, to be followed when that is the more convenient course * * *. We hold that it is open to a court to proceed as is most convenient, subject to the exception that, though the defendant has not infringed, claims may be so evidently invalid that the court should so declare.'
 
 
 57
 In Patent Scaffolding Co. v. Up-Right, Inc., 9 Cir., 1952, 194 F.2d 457, we indicated our agreement with Judge Hand's views, and construed our earlier decision in Helbush v. Finkle, 9 Cir., 1948, 170 F.2d 41 as being in accord. We do not think that our recent decision in Coe Mfg. Co. v. Jeddeloh Bros. Sweed Mills, Inc., 9 Cir., 1962, 306 F.2d 455, is to the contrary. There, the trial court merely assumed the validity of the patent. Here, the trial court considered the question, as is shown above, concluded that the patent should be narrowly construed, and further concluded that, as so construed, the claims litigated might be valid, but did not decide the question. It quite properly did not adjudge that the claims were valid. This would run afoul of the rule in Electrical Fittings Corp., supra. On the other hand, because defendants presented no evidence relating to the validity of the first 18 claims, the court was in no position to pass upon the validity of the patent as a whole. Defendants, having tendered that issue but not supported it at trial, are in no position to complain. The court felt, and we think correctly, that it was not in a position to find claims 19 through 28 invalid. The claims are not, on this record, 'so evidently invalid that the court should so declare.'
 
 
 58
 The question of justiciable issues.
 
 
 59
 Plaintiffs assert that there is no justiciable issue as to either infringement of Reissue 24,731 by Exhibit 9, or as to the validity of claim 7 of the reissue. This contention is based upon the fact that, in the October, 1960 settlement, plaintiffs had waived their rights to assert claim 7 against defendants for manufacture, sale or use of Exhibit 9 before October 18, 1960, or for use of any such containers sold before that date, and that none was made or sold thereafter. However, there was no waiver of such claims as against Exhibit 9 containers that might be made thereafter. Plaintiffs were then asserting, in this suit, infringement of patent '535 by Exhibit 9. In their counterclaim, defendants raised the issue as to validity of Re. 24,731, and its infringement, claiming that the patent was closely related to '535, and that plaintiffs asserted that Exhibit 9 infringed it. By interrogatory, they inquired whether plaintiffs did so assert. Plaintiffs objected, but were required to answer, and then stated that they did claim infringement. The record also shows that, under dates of March 11, March 29, and November 16, 1960, written notice on plaintiffs' behalf was given to one of Banner's customers that Exhibit 9 did infringe Re. 24,731.
 
 
 60
 We think that there is clearly a justiciable issue as to Exhibit 9 and Re. 24,731. Plaintiffs had claimed infringement of that patent in letters to defendant Banner's customer. It is obvious that Banner, with what seems to us to be merely elementary prudence, had stopped manufacture of Exhibit 9 only because of the pendency of this suit. It knew that, if it won this suit, it would almost certainly face further litigation, based upon Re. 24,731, if it then began again to make and sell Exhibit 9. It cannot fairly be said that the counterclaim, as to Re. 24,731 and Exhibit 9, constitutes harassment of plaintiffs by a potential infringer. There had been both maufacture and sale of Exhibit 9, on the one hand, and a claim of infringement by plaintiffs, on the other. We can scarcely conceive of a more appropriate case for declaratory relief. See 6 Moore, Federal Practice, P57.20, p. 3118; Borchard, Declaratory Judgments, 2d Ed., 1940, p. 807; Crowell v. Baker Oil Tools, Inc., 9 Cir., 1944, 143 F.2d 1003; Caterpillar Tractor Co. v. International Harvester Co., 9 Cir., 1939, 106 F.2d 769; Welch v. Grindle, 9 Cir., 1957, 251 F.2d 671; Massa v. Jiffy Prod. Co., Inc., 9 Cir., 1957, 240 F.2d 702.
 
 
 61
 The same contention is made by plaintiffs as to possible infringement of patents '535 and Re. 24,731 by Exhibit O. As to this product, the record shows that it had been designed by Banner and shown to prospective customers, but not sold. It could be made by the use not the same machinery Banner had acquired to make Exhibit 9, but no special tooling had been acquired to make it. It is similar in basic design to Exhibit 9, but has no 'clearway' below the upper support points. It cannot be nested vertically, but can be so nested that every fourth receptacle is vertical with the bottom receptacle in the stack; it can be tiered either vertically or in an offset position. This erceptacle was first brought forward during the taking of a deposition in this case. Defendants then inquired, by interrogatory, as to whether plaintiffs claimed infringement. Over objection, they were required to answer, and stated that they did so claim, as to both patents.
 
 
 62
 If this were merely a suit for declaratory judgment by Banner, dealing solely with Exhibit O and the two patents, with no prior history of litigation between the parties, there would be some as to whether there were a justiciable controversy. That question, however, is not before us. It is true, as defendants allege, that the two patents are closely related. It is also true that Exhibit O is quite similar to Exhibit 9. We think that, this suit and others having been brought by plaintiffs, it is sensible and efficient judicial administration to permit inclusion in the litigation of the questions presented in relation to Exhibit O. (See Dewey & Almy Chem. Co. v. American Anode, Inc., 3 Cir., 1943, 137 F.2d 68) We are particularly influenced in this decision by the fact that the two patents in suit, so far at least, have not fathered any commercial production; they have begotten only lawsuits.
 
 
 63
 'REISSUE '731 (REISSUE OF LOCKWOOD '936) vs. EXHIBIT 9.
 
 
 64
 ' It will be recalled that the original Lockwood '936 taught tierable-nestable receptacles so constructed that their bottom dimensions were longer than their top dimensions, any nesting of two receptacles being accomplished, without moving parts, without rotation, but necessarily by means of a tilting manipulation to bring the top part of an upper receptacle under the top ends of a lower receptacle and thus into a clearway for nesting, like parts of one receptacle being in vertical registration with like parts of the other in both tiering and nesting position. We have also earlier noted that Lockwood, after conceiving what he considered to be a better idea, i.e., accomplishing nesting, not by a tiliting manipulation, but by a slight, horizontal lateral manipulation, applied for a patent on that idea in 1957, later granted, 1959, as Lockwood '535.
 
 
 65
 'While application '535 was still pending, he also applied for a reissue of his earlier Lockwood '936 for the reason, according to the evidence, that he believed he could have claimed in his original application, not only receptacles requiring tilting type manipulation but also receptacles nestable by the horizontal, lateral manipulation. This he sought to accomplish by adding a generic Claim 7, couched in terms broad enough to include either type of manipulation, as the basis for a reissue of '936. It should be noted, however, that all embodiments shown in the reissue patent are so constructed with longer tops than bottoms that nesting must necessarily be accomplished by the tilting manipulation, not by any horizontal, lateral manipulation.
 
 
 66
 'Plaintiffs contend that Banner's receptacle, Ex. 9, the accused article, infringes Claim 7 of the reissue * * *.'
 
 
 67
 'First, according to defendants' expert testimony there is not found in Ex. 9 the limitation of Claim 7 (Col. 5 line 40) concerning bottom load supporting part and upper edge parts and side parts including upper tiering support members rigidly connected with said upper edge and side parts, nor the limitation (Col. 6 line 3) concerning bottom load supporting part and upper edge supporting parts and side parts including lower tiering support members rigidly connected with side parts and bottom. Defendants' testimony was to the effect that these limitations are not found in Ex. 9 because its upper tiering support members are formed by an endless wire extending around the periphery of the receptacle, the upper tiering support members not being included in the bottom load supporting part as required by Claim 7 and, further, because its lower tiering support members are formed by individual wire loops extending across the bottom of the receptacle not being rigidly connected with side parts and not being included in the upper edge parts and side parts as required by Claim 7.
 
 
 68
 'Next, according to defendants' expert testimony, there is absent in Ex. 9 the 'clearway' required by Claim 7, in much the same manner as required by Claim 19 of Lockwood '535 already discussed.
 
 
 69
 'Thirdly, according to defendants' expert testimony, there is not to be found in Ex. 9, the limitation implied in Claim 7 for upper and lower tiering support members of the type shown in all drawings and specifications nor is there found in Ex. 9 the tilting manipulation implicit in those drawings and specifications.
 
 
 70
 'The Court, applying narrow, rather than liberal construction, * * * concludes that the testimony of defendants' expert should be accepted on all three issues, and there is, therefore, no infringement of the reissue patent by Ex. 9. However, the issue of infringement, although necessarily involved in the case, becomes immaterial if we are correct in the view we take concerning the validity of the reissue patent.
 
 
 71
 'VALIDITY OF REISSUE '731.
 
 
 72
 'Defendants contend that the reissue patent is invalid for several reasons: First, that no error or inadvertence was shown as a basis for the reissue as required by law; second, that Claim 7 of the Reissue is broader than what appears to have been intended and taught by the original patent '936; third, that the manufacture and sale of embodiments of the original '936 and the reissue thereof, e.g., Mid-West's Ex. 1 herein, for more than a year prior to the filing for the reissue, renders the reissue void under 35 U.S.C. 102(b); fourth, that Claim 7 of the reissue does not patentably distinguish the prior art.'
 
 
 73
 We agree with the second ground, and therefore, do not pass upon the others.
 
 
 74
 'The right to a reissue of a patent is exceptional and is given only to those who come clearly within the exception. It must affirmatively appear in the case of a reissue patent not only that the state of the art permitted a broader claim than in the original patent, but also that the failure to claim it was due to error or inadvertence. The public, acting on the faith of things as they are, should not have the burden of a change it has no reason to expect. When a patentee has once declared himself he is bound by the claims and drawings and specifications set forth in this application unless he brings himself within the provisions of Sec. 251 by showing some error or inadvertence. Absent such a showing, the right to a reissue does not lie. Nor is there any presumption favoring the right to reissue. See: Gerhardt v. Kinnaird, 162 F.Supp. 858, 864 (E.D.Ky.1958).
 
 
 75
 ' Further, in any event it must appear on the face of the original patent that the matter covered by the reissue was intended to have been covered and taught by the original. Any broader claims of the reissue must be more than merely suggested or indicated in the original. A reissue that broadens the claims to cover a new, different combination not fairly shown by the original patent to have been taught and intended is void. This is true even though the reissue claims a result that could be brought about by following the process of the original patent. See: Riley v. Broadway-Hale Hale Stores, Inc., 217 F.2d 530 (9th Cir. 1954); United States Indus. Chems. Inc. v. Carbide & Carbon Chems Corp., 315 U.S. 668 (62 S.Ct. 839, 86 L.Ed. 1105) (1942); Kalich v. Patterson Pacific Parchment Co., 137 F.2d 649, 652 (9th Cir. 1943); Leishman v. Associated Wholesale Elec. Co., 137 F.2d 722 (9th Cir.) cert. den. 320 U.S. 794 (64 S.Ct. 262, 88 L.Ed. 478) (1943).
 
 
 76
 'We are of the opinion, . . . that the original '936, containing exclusively embodiments so designed and constructed that nesting could be accomplished by tilting manipulation only, did not show an intention to include a manipulation by horizontal, lateral shift manipulation that could be accomplished only by different means of design and structure than those actually shown in the drawings and the specifications.
 
 
 77
 'For these reasons the Court concludes that Claim 7 of Reissue 24,731 is invalid.'
 
 
 78
 'LOCKWOOD 535 and REISSUE 731 vs. EXHIBIT O.
 
 
 79
 'Plaintiffs contend that Ex. O infringes Claims 20 through 23 and Claim 25 of Lockwood '535.
 
 
 80
 'Claim 20 provides: 'The dimensions of the upper and lower parts of said receptacle permitting the lower part of an upper receptacle to enter vertically downward into the upper part of a lower like receptacle * * * and permitting a shifting movement * * * generally in a horizontal plane, in unshifted position said lower tiering support portions of an upper receptacle being portioned to rest vertically upon said upper tiering support portions of a lower like receptacle.'
 
 
 81
 'Here again we have a question similar to that involved with Exhibit 9, whether the dimensions of the upper and lower parts of the receptacle are such as to permit the lower part of an upper receptacle to enter vertically downward into the upper part of a lower like receptacle.
 
 
 82
 'Again construing the claim as applicable to the receptacles in a tiered position, we conclude for reasons similar to those involved with Ex. 9, that Claim 20 does not read upon Ex. O in this respect and, further, that Claims 20-23 and Claim 25 are not infringed by Ex. O.'
 
 
 83
 What we have said about the court's refusal to hold patent '535, or at least its claims 19 through 28, invalid is, we think, equally applicable to defendants' claim that the entire reissue patent, Re. 24,731, should have been held invalid.
 
 
 84
 Affirmed.